T.C. Summary Opinion 2004-11


UNITED STATES TAX COURT


JAMES J. LEONARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20205-02S.                Filed February 4, 2004.


James J. Leonard, pro se.

<u>Michael K. Park</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.

Respondent determined a deficiency in petitioner's Federal income tax of $5,976 for the taxable year 2000.

The issues for decision are: (1) Whether petitioner's failure to make payments on a loan from a qualified retirement plan resulted in a taxable distribution from that plan, and if so (2) whether petitioner is liable for a section 72(t) additional tax on the distribution.[1]

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in North Richland Hills, Texas, on the date the petition was filed in this case.

Petitioner began working for General Electric (GE) Railcar Services (GE Railcar) in 1997. Petitioner maintained a retirement account with the GE Railcar Services Investment Retirement Program (GE Railcar plan). In June 2000, while petitioner was still employed at GE Railcar, he withdrew $14,500 from his GE Railcar retirement account as a loan. Under the terms of the loan agreement, the loan principal and finance charges were to be repaid through deductions from each of

---

[1]Petitioner does not dispute respondent's determination that petitioner received dividend income in the year in issue.

petitioner's biweekly payroll checks through July 8, 2005.  Each biweekly payment was to be $143.59.[2]

By letter dated June 12, 2000, petitioner was offered a position in another operating division of GE, GE Sports Lighting Systems, L.P. (GE Lighting).  Petitioner accepted this position and began working at GE Lighting in the last week of June.  In July 2000, petitioner changed his residence from Texarkana, Texas, to North Richland Hills, Texas, in order to be closer to his workplace.

By letter dated August 18, 2000, the GE Railcar benefits administrator notified GE Investment Retirement Services that petitioner's employment with GE Railcar had been terminated and that he had changed his mailing address.  The address listed in this notification was the address of GE Lighting:  "8713 Airport Freeway Suite 104, North Star Plaza, N. Richland Hills, TX 76180".  Petitioner's quarterly retirement account statements were sent to this address from September 2000 through March 2001.  In December 2000, GE Lighting changed to a different suite in the same building, resulting in a change in petitioner's employment address.  Petitioner's new address was not correctly recorded by the GE Railcar plan, causing petitioner's quarterly statements

---

[2]The promissory note that petitioner signed in order to obtain the loan states that petitioner "further agrees that the loan is subject to the loan provisions contained in the Plan". These provisions are not in the evidentiary record in this case.

from June 2001 through March 2002 to be sent to this address: "8713 Airport Fwy Sui, North Star Plaza II, N. Richland Hills, TX". Neither of the two addresses above contained the name of petitioner's operating division, GE Lighting, and the latter address omitted petitioner's suite number.

From the time that the loan was distributed to petitioner in June 2000, no loan payments were ever deducted from petitioner's paychecks because of petitioner's transfer to GE Lighting. Petitioner was aware that no deductions were being made, but he did not remit any payment to the GE Railcar plan. During this same timeframe, certain child support payments which petitioner was required to make also were not being deducted from his paychecks. Petitioner was aware of this fact, and in response he made payments directly to the appropriate child support enforcement authority.

On November 27, 2000, GE Investment Retirement Services sent a letter to petitioner notifying him that no payments had been applied against his loan and requesting that petitioner remit to the GE Railcar plan, by no later than December 29, 2000, either the delinquent payments or the full amount of the loan. The letter stated that failure to do so would result in a deemed distribution due to a loan default. In January 2001, a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., was issued

to petitioner, reporting the full amount of the loan as a taxable distribution. The Form 1099-R was mailed to "8713 Airport Freeway, North Star Plaza II, N. Richland Hills, TX 76118"; petitioner's operating division and suite number were again omitted.

On petitioner's Federal income tax return for taxable year 2000, petitioner did not report the $14,500 loan amount as income. In the notice of deficiency, respondent determined that the $14,500 was both includable in petitioner's income as a taxable distribution and subject to the section 72(t) additional tax on early distributions from qualified retirement plans.

The first issue for decision is whether petitioner's failure to make payments on the loan from the qualified retirement plan resulted in a taxable distribution from the plan.

Distributions from qualified plans generally are included in the distributee's income in the year of the distribution in accordance with the provisions of section 72. Sec. 402(a). As a general rule, a qualified plan participant who receives a loan from a plan is treated as having received a distribution from the plan in the year the loan is received. Sec. 72(p)(1)(A). However, paragraph (2) of section 72(p) provides an exception for certain loans which prevents the inclusion in income. A limitation upon this exception is found in subparagraph (C) of paragraph (2), which provides as follows:

Except as provided in regulations, this paragraph shall not apply to any loan unless substantially level amortization of such loan (with payments not less frequently than quarterly) is required over the term of the loan.

Thus, a loan which does not meet the requirement of section 72(p)(2)(C) by requiring substantially level amortization is treated as a distribution and is included in income under section 72(p)(1)(A).

Respondent argues that a deemed distribution to petitioner was made in 2000 because petitioner defaulted on the loan in that year. Specifically, respondent argues that petitioner's failure to make the loan payments as required under the terms of the loan violated the section 72(p)(2)(C) requirement, thereby resulting in a deemed distribution in the year of the default. In support of this argument, respondent in his trial memorandum cites the final regulations issued under section 72(p). However, because petitioner's loan was made in June 2000, these regulations do not apply in this case.[3]

_____

[3]The final regulations under sec. 72(p) generally apply only to loans made on or after Jan. 1, 2002. Sec. 1.72(p)-1, Q&A-22(b), Income Tax Regs. Under these regulations, when a participant fails to make payments in accordance with the terms of a loan, the loan is treated as no longer meeting the sec. 72(p)(2)(C) requirement, thereby resulting in a deemed distribution. Sec. 1.72(p)-1, Q&A-4(a), Income Tax Regs. The regulations elaborate on the timing and amount of deemed distributions resulting from loan defaults as follows:

(a) Timing of deemed distribution. Failure to make any installment payment when due in accordance with the terms of the loan violates section 72(p)(2)(C) and, accordingly,

(continued...)

We agree with respondent's application of section 72(p)(2)(C) to the facts of this case. Petitioner did not make any payments from the time of the loan disbursement in June 2000 through the time that the loan was reported as a distribution by the plan on December 29, 2000. Two calendar quarters had passed since petitioner had obtained the loan, resulting in a violation of the statutory imperative that the terms of the loan require that payments be made "not less than quarterly". Sec. 72(p)(2)(C). Furthermore, this was a period of approximately 6 months, or 10 percent of the original 5-year term of the loan.

---

[3](...continued)
results in a deemed distribution at the time of such failure. However, the plan administrator may allow a cure period and section 72(p)(2)(C) will not be considered to have been violated if the installment payment is made not later than the end of the cure period, which period cannot continue beyond the last day of the calendar quarter following the calendar quarter in which the required installment payment was due.
   (b) Amount of deemed distribution. If * * * there is a failure to pay the installment payments required under the terms of the loan * * * then the amount of the deemed distribution equals the entire outstanding balance of the loan (including accrued interest) at the time of such failure.

Sec. 1.72(p)-1, Q&A-10, Income Tax Regs. Before the issuance of the final regulations, proposed regulations had been issued which, for purposes of this case, had the same provisions as the final regulations. The proposed regulations were to apply only to loans made a certain period of time after final regulations had been published. Sec. 1.72(p)-1, Q&A-19, Proposed Income Tax Regs., 60 Fed. Reg. 66237 (Dec. 21, 1995). In this Court, proposed regulations generally are afforded no more weight than that of any other position advanced by the Commissioner at trial. Gen. Dynamics Corp. & Subs. v. Commissioner, 108 T.C. 107, 120 (1997); Laglia v. Commissioner, 88 T.C. 894, 897 (1987).

Thus, as of December 29, 2000, the terms of the loan could no longer have required "substantially level amortization * * * over the term of the loan". Id. Because at that time the loan violated the terms of section 72(p)(2)(C), it no longer met the requirements for the section 72(p)(2)(A) exception, and under section 72(p)(1)(A) the loan amount was treated as having been distributed to, and received by, petitioner in the taxable year 2000.

Petitioner argues that he did not receive a deemed distribution from his retirement plan because he never received (a) the quarterly retirement account statements that were mailed to his employment address, (b) the letter dated November 27, 2000, that requested that he remit the delinquent payments, or (c) the Form 1099-R which was issued to him. Petitioner admits that he knew the payments were not being deducted from his paycheck. In fact, petitioner asserts that he contacted GE's accounting department by e-mail, notifying them that neither his loan payments nor his child support payments were being deducted from his paychecks. Petitioner also admits that he did not make any loan payments directly to the plan.

None of the assertions that petitioner offers in support of his argument, even if accepted as fact, would alter the result under the statute. As discussed above, petitioner did not make the periodic payments required under the terms of the loan and

required under section 72(p)(2)(C).  The result was a deemed distribution to petitioner in 2000.

The second issue for decision is whether petitioner is liable for a section 72(t) additional tax on the distribution from the qualified retirement plan.  Section 72(t)(1) generally imposes a 10-percent additional tax on certain early distributions from qualified retirement plans, unless a distribution comes within one of several statutory exceptions.  See sec. 72(t)(2).  Petitioner does not argue, and nothing in the record indicates, that any of the exceptions apply to the case at hand.  We therefore hold that petitioner is liable for the section 72(t) additional tax as determined by respondent.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.